## UNITED STATES v. THE PACIFIC.

First Division.  Ketchikan.  October 31, 1924.

No. ——.

**Fish ⟨key⟩16—Forfeiture—Evidence must be clear and convincing.**
> To authorize a condemnation of property seized by the administrative officers as forfeited, the evidence of a violation of the law must be clear and convincing.

This case arises on an information filed by the United States for the condemnation and sale of the gas screw vessel Pacific, her tackle, apparel, and furniture, of which one Edwin Lynch is master, a 170-fathom purse seine, and 121 chum, or dog, salmon seine, for violation of the Act of Congress of June 6, 1924 (48 USCA §§ 221–228, 232–234 [U. S. Comp. St. §§ 3622¼–3632]), entitled "An act for the protection of the fisheries of Alaska, and for other purposes." The information sets forth two counts; the first charging that the said vessel was engaged, by her crew, in fishing for commercial purposes on September 9, 1924, with the seine aforesaid, within 500 yards of the mouth of a salmon stream (unnamed) at the head of Walker's Cove, an estuary of Behm Canal, in this division of the territory. The second count charges that the said vessel and seine were used for catching fish for commercial purposes in the waters of Walker's Cove on said date, contrary to the provisions of the statute aforesaid; said Walker's Cove being then and there reserved from fishing.

All the allegations of the libel were denied by the claimant of the vessel. Hearing was had before the court on October 20, 1924. The testimony on the part of the United States was very short, consisting only of that of the fish warden, Iver N. Stensland. The substance of his testimony is that on the morning of September 29, 1924, he, with his patrol boat, entered Walker's Cove, and when about two miles distant from its head saw the gas boat Pacific near the head of the cove; that the Pacific was not anchored, but the engine was turning over, because he saw the steam from the exhaust; that when he first saw the Pacific the crew appeared to be all on deck, engaged in hauling a seine; that after he discovered the Pacific she started up and came towards his boat, as if about to leave

the cove, but swung around to the southern side of the cove, near a creek, and anchored; that, when he arrived alongside of the Pacific, he found the seine dripping with water, and, on questioning the master as to whether he had been fishing, received the reply that he had some fish, but that they were not caught in the cove. The witness further testified that he heard fish flapping in the hold and, on opening up the hatch, found some fish still moving their gills. One end of the seine appeared to be ragged, as if it were hastily cut off from the bunt. After some conversation with the master and crew of the Pacific, in which the captain told him that he was going to Smeaton Bay to make a set, the Pacific left. Stansland, after the Pacific left, went over to where he had first seen the Pacific, and found the bunt of the seine floating in the water. On hauling in this bunt, he found some half dozen live dog salmon caught therein. He further testified that dog salmon, after being taken from the water, live only 15 to 20 minutes, and that, when caught in a net and left in the water, they live probably for a few minutes longer; that, inasmuch as the captain had stated to him that they had not fished in Walker's Cove, and that the fish in the hold of the boat, consisting of 121 dog salmon, were caught outside of the cove, in the waters of Behm Canal that morning, and it appearing that it would consume more than an hour for the Pacific to run from the entrance to the head of Walker's Cove, coupled with the finding of the bunt cut off from the seine, which apparently fitted the seine on the Pacific, the witness testified that he considered himself justified in making the seizure of the boat and the fishing paraphernalia thereon, and that he then followed up the Pacific and seized her at Smeaton Bay on the 29th day of September.

The captain and crew of the Pacific all positively deny fishing within the waters of Walker's Cove. They each and all stated that the fish in the hold of the boat were caught by them after making two ineffectual sets that morning in a bay just north of the mouth of Walker's Cove, in the waters of Behm Canal; that after making the third set they came into the cove for the purpose of hunting deer; that they had found no anchorage near the mouth of the creek on the northern side of the cove at its head, and therefore swung around and sought anchorage near the mouth of the southern creek. They dis-

claimed all knowledge of the bunt found by the witness for the United States, and stated that the seine on the boat was such as was commonly used by fishermen, in that end of the seine was usually clewed up, instead of having a regular bunt. The testimony of the United States was to the effect that the bunt found by the crew of the patrol boat was all tarred, and that that part of the seine on the Pacific next to the leads was tarred, and the other portion tanned; that, after being seized, the seine on the boat was re-examined, and that it was not in the same condition as it was when first seen by Mr. Stensland on the Pacific, the end having been clewed up, as if in readiness for fishing. Witnesses for the claimant testified that nothing had been done with the seine since the witness Stensland had first examined it on the Pacific in Walker's Cove.

The evidence on all these points is directly contradictory and conflicting. The testimony of the witness Stensland as to the life of a dog salmon after being caught is contradicted by that of the defendants, who state that the dog salmon is a much hardier fish than the cohoe or king salmon, and will live longer out of water; that often a dog salmon will live for from one to two hours after being taken out of water.

A. G. Shoup, U. S. Dist. Atty., of San Jose, Cal.
Wm. L. Paul, of Ketchikan, for respondent.

REED, District Judge. To authorize a condemnation of property seized by the administrative officers as forfeited, the evidence of a violation of the law must be clear and convincing. The testimony on the part of the United States is mostly circumstantial, while that of the defendants is positive that they did no fishing within the waters of Walker's Cove, and I am not satisfied, from the evidence submitted on the part of the United States, in view of the denial by the defendants, that they were actually fishing within the waters of said cove on the morning of September 29th, or that they were fishing within 500 yards of the mouth of the salmon stream at the head thereof. While it is not necessary that the testimony on the part of the prosecution should convince one beyond a reasonable doubt, yet under the authorities the testimony must be clear and convincing that the law was violated.

Such being my view of the testimony in this case, from a careful review of it, I must come to the conclusion that the

libel should be dismissed, although I am of the opinion that, under the circumstances as they appeared to the government officers at the time, there were reasonable grounds for the seizure. Such being my conclusion, the libel against the gas screw Pacific, her tackle, apparel, and furniture, and the seine thereon, will be dismissed and the vessel and the seine will be released from custody. It appears that the fish, consisting of 121 dog salmon, had been sold before the initiation of these proceedings. Therefore the proceeds thereof will be paid over to the master of the Pacific. Let findings of fact and decree be entered accordingly.